IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EARL GARNER**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No.: 1:21-cv-3253-JMC |
| **FREDERICK COUNTY PUBLIC SCHOOLS**, | | |
| | * | |
| *Defendant*. | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Earl Garner brings this employment discrimination and wrongful termination action against Defendant Frederick County Public Schools ("FCPS") seeking a declaratory judgement, injunctive relief, and compensatory damages. (ECF No. 8). Presently before the Court is Defendant's Partial Motion to Dismiss Count III of Plaintiff's Amended Complaint (ECF No. 27). In addition to Defendant's Partial Motion to Dismiss, the Court has considered Plaintiff's Opposition (ECF No. 30) and Defendant's Reply to Plaintiff's Opposition (ECF No. 31). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Defendant's Motion is GRANTED.

**I. BACKGROUND**

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Plaintiff has held a position as a full-time teacher for FCPS since 1984. (ECF No. 8 at ¶ 11). After spending six years as a laboratory instructor, Plaintiff became a Student Support Teacher ("SST") at Heather Ridge School ("HRS") and remained in this position until his retirement on August 8, 2019. *Id.* at ¶ 39. In November 2017, Mr. Jett Reid, a FCPS representative, attended an SST meeting at which Plaintiff was present, and Mr. Reid relayed to the SSTs that they would not lose

their jobs despite an upcoming change regarding SSTs. *Id.* at ¶ 14. In June 2018, Mr. Reid emailed all SSTs seeking to learn of their intentions for the following school year, but Plaintiff chose not to reply because the email contained no explanation or elaboration regarding the consequences of the potential choices. *Id.* at 16. After the death of Mr. Reid in July 2018, Superintendent Dr. Markoe assured Plaintiff that a new plan for the SSTs would be implemented soon. *Id.* at 18. Based upon this assurance, Plaintiff waited for the new plan to be introduced. *Id.*

In February 2019, Ms. Stiffler, the Acting Principal of HRS, provided Plaintiff with two letters of involuntary transfer over the span of two weeks. *Id.* at ¶ 19. Following an inquiry from Plaintiff, Ms. Stiffler informed Plaintiff that she was converting his position from SST to behavioral psychologist. *Id.* at ¶ 20. Ms. Stiffler further informed Plaintiff that the other SST position at HRS would not be converted, and Ms. Stiffler proceeded to reference Plaintiff's age by stating, "the kids of today are different than they were twenty . . . years or even ten . . . years ago." *Id.* at ¶ 21. Plaintiff soon realized that because he was the only African American, male teacher in HRS history, there would be no African American, male teachers left at HRS upon his transfer. *Id.* at ¶ 22. Believing that his transfer was motivated by Ms. Stiffler's desire to rid her staff of African American males, Plaintiff involved his union representative Andrew Macluskie. *Id.*

Mr. Macluskie provided Plaintiff with a memo indicating that all SSTs willing to take prescribed classes would be grandfathered into their present SST positions. *Id.* at ¶ 23. However, Plaintiff alleges that he was not permitted to take the classes despite signing up for them. *Id.* at ¶ 32. Plaintiff alleges that Ms. Stiffler excluded him from the list of other SSTs who had received this memo in October of 2018. *Id.* at ¶ 24. Plaintiff then filed a grievance against Ms. Stiffler, and this grievance was brought to the attention of Ms. Lucas, Dr. Harris, and Tim Thornburg.[1] *Id.* at ¶

---

[1] Plaintiff's amended complaint fails to designate Ms. Lucas, Dr. Harris, or Mr. Thornburg by anything other than their names. However, Plaintiff's original complaint and the electronic filing docket report indicates that Mr.

26. Plaintiff alleges that Ms. Lucas and Mr. Thornburg became focused on pushing him out of FCPS in retaliation for his decision to file a grievance. *Id*. at ¶ 32. In May 2019, Plaintiff and Mr. Macluskie met with Mr. Thornburg, and Mr. Thornburg allegedly mocked Plaintiff's credentials and completed coursework throughout the meeting. *Id.* at 34. During the time between this meeting and Plaintiff's retirement in August 2019, Plaintiff received a total of four separation letters indicating that he would not be grandfathered into the new position. *Id.* at ¶¶ 35–38.

Plaintiff alleges that Defendant subjected him to unlawful conduct and retaliation in violation of Title VII based upon Plaintiff's race, sex, and age. Furthermore, Plaintiff alleges that the same conduct by Defendant was performed in violation of the Maryland Fair Employment Practices Act ("MFEPA"). The complaint alleges four counts against Defendant: (1) employment discrimination based upon race under Title VII, (2) employment discrimination based upon retaliation under Title VII, (3) wrongful termination under Maryland common law, and (4) employment discrimination under the MFEPA. Defendant has moved to dismiss Count III pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of wrongful discharge under Maryland law.

## II.  STANDARD OF REVIEW

"A motion to dismiss pursuant to [Fed. R. Civ. P. 12(b)(6)] ought not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 569 (D. Md. 2003). (citation and internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). "In

---

Thornburg was the Director of Human Resources for Defendant, and that Ms. Lucas was the Executive Director of Human Resources for Defendant. Furthermore, while Ms. Harris is never designated by her title in the pleadings, Plaintiff's Amended Complaint recognizes her as the "author of the October Memorandum" which informed SSTs of their ability to be grandfathered into the new positions. (ECF No. 8 ¶¶ 23–26).

reviewing the complaint, the court accepts all well-plead allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Terry*, 241 F. Supp. 2d at 569 (citing *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997)). "Given the Federal Rules' simplified standard of pleading, [a] court may dismiss a complaint only if it is clear that no relief could be granted under any sets of facts that could be proved consistent with the allegations." *Terry*, 241 F. Supp. 2d at 569 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L.Ed.2d 1 (2002)) (other citation omitted).

## III.   ANALYSIS

Under Maryland law, an employer ordinarily may discharge an at-will employee for any reason whatsoever. *See Adler v. Am. Standard Corp.*, 291 Md. 31, 35 (1981) (citation omitted). However, Maryland law recognizes "the tort of abusive or wrongful discharge as a 'narrow exception' to the general rule in circumstances where an at-will employee's termination contravenes a 'clear mandate of public policy.'" *Terry*, F. Supp. 2d at 569 (quoting *Adler*, 291 Md. at 47). When an employee claims wrongful discharge, they "must specifically identify the clear mandate of Maryland public policy that was violated by his termination." *Terry*, F. Supp. 2d at 569 (quoting *Szaller v. Am. Nat'l Red Cross, et al.*, 293 F.3d 148, 151 (4th Cir. 2002)) (internal quotations and other citation omitted). If a mandate of public policy is to form the basis of a wrongful termination claim, the public policy "must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Porterfiled v. Mascari II, Inc.*, 142 Md. App. 134, 140 (2002) (internal quotations & citation omitted).

4

Plaintiff has failed to state a viable claim of wrongful termination for two reasons. First, a plaintiff bringing a claim for wrongful termination is required to "plead with particularity the source of the public policy allegedly violated by [his] termination." *Terry*, 241 F. Supp. 2d at 569–70 (quoting *Porterfiled*, 142 Md. App. at 140) (internal quotations omitted). "The purpose of this requirement is to enable the court to determine as a matter of law whether the public policy asserted by the plaintiff constitutes a clear, pre-existing mandate." *Terry*, 241 F. Supp. 2d at 550 (other citations omitted). In his complaint, Plaintiff merely states, "Defendant's decision to terminate Plaintiff is against the public policy foundations of an at-will agreement as the dismissal was in direct response to Plaintiff vocalizing the systemic and prejudicial treatment of the Frederick County Public School System." (ECF No. 8 at ¶ 93). In *Terry*, this Court decided a motion to dismiss in a case involving claims of employment discrimination under Title VII and wrongful discharge under Maryland law. *Terry*, 241 F. Supp. 2d at 568. In Terry, the Court found that in their complaint the plaintiff "merely state[d], without citation to any case, statute or regulation, that the avowed public policy of the state of Maryland is to encourage citizens, including employees, to report illegal conduct and activities to appropriate authorities." *Id.* at 570 (internal quotations omitted). Despite Plaintiff's contention that he has satisfied the particularity requirement in pleading a claim for wrongful termination under Maryland law, the Court finds that Plaintiff has failed to enable the Court, based on the complaint, to determine as a matter of law whether the public policy asserted by Plaintiff constitutes a clear, pre-existing mandate. *Id.* at 550.[2]

---

[2] "Maryland courts generally have found a clear mandate of public policy in only two circumstances: (1) where an employee has been discharged for refusing to violate the law, or (2) where an employee has been discharged for attempting to exercise a specific legal duty or right." *Id.* at 570 (citing *Adler*, 291 Md. at 42; *Thompson v. Memorial Hosp. at Easton*, Maryland, Inc., 925 F. Supp. 400, 406 (D. Md. 1996)). Rather than cite a Maryland case supporting the blanket assertion of a public policy violation in his complaint, Plaintiff cites a case from the Supreme Court of Appeals of West Virginia, *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116 (1978). This case does not save Plaintiff's deficiency in pleading a public policy violation with particularity in accordance with Maryland law.

Second, assuming, *arguendo*, that Plaintiff has plead a claim of wrongful termination with sufficient particularity, Plaintiff has based his claims of employment discrimination and retaliation on Title VII and the MFEPA, and Plaintiff has acknowledged in his opposition that "[t]he public policy that was violated was Defendant's failure to adhere to not only their own anti-discrimination policy, but also state and federal anti-discrimination laws that they are legally bound to comply with as a public school." (ECF No. 30-1 at pp. 4–5; *see also* ECF No. 8 at ¶¶ 90–94). Under Maryland law, a claim of wrongful termination "will not lie where the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy." *Chappel v. S. Md. Hosp., Inc.*, 320 Md. 483, 490 (1990) (citing *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 609 (1989)). The tort of wrongful termination is "designed to provide a remedy for such conduct when no other remedy is available. Thus, if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available." *Porterfield*, 142 Md. App. at 141 (citations omitted). Wrongful termination suits "for employment discrimination are generally precluded because federal and Maryland anti-discrimination laws create a civil remedy to vindicate discrimination in employment settings." *Carson v. Giant Food, Inc,* 187 F. Supp. 2d 462, 483 (D. Md. 2002) (citation omitted)*; see also Terry*, 241 F. Supp. 2d at 571 (dismissing plaintiff's wrongful discharge claim to the extent it was based on "alleged retaliation by Defendant against Plaintiff for filing charges with the EEOC . . . because a remedy already exists under Title VII and state law."); *Kerrigan v. Magnum Ent., Inc.*, 804 F. Supp. 733, 735 (D. Md. 1992) ("It is clear that when a remedy is available under Title VII or [Maryland Fair Employment Practices Law], an action for wrongful discharge will not lie in Maryland.").

Other than Count III of Plaintiff's Amended Complaint, all other counts arise under Title VII and the MFEPA. Plaintiff's Count III claim for wrongful termination specifically alleges that "[d]efendant dismissed Plaintiff from his position in retaliation for Plaintiff's advocacy regarding the mishandling of the SST memorandum and the discriminatory culture it created that Plaintiff was subjected to." (ECF No. 8 at ¶ 90). Plaintiff's remaining counts (Counts I, II, and VIII), based upon the same conduct Plaintiff used to support his wrongful termination claim, are further evidence that Plaintiff's remedy is available under Title VII and the MFEPA. Furthermore, Plaintiff has not alleged that the remedy for his allegations does not lie under Title VII or the MFEPA, nor has Plaintiff distinguished his case from the extensive caselaw supporting Defendant's position. (ECF No. 27).

### IV. CONCLUSION

For these reasons, Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (ECF No. 27) is GRANTED with prejudice.[3] A separate order follows.

Date: September 16, 2022

                  /s/
J. Mark Coulson
United States Magistrate Judge

---

[3] "Dismissal with prejudice is warranted only when[, as is the case here,] a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Bouknight v. KW Assocs., LLC*, 3:16-CV-2010-CMC-PJG, 2016 WL 3344336, at *4 n.6 (D.S.C. June 16, 2016) (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)); *see also Smith v. Verizon Wash., D.C.*, PJM 11-1301, 2011 WL 5547996, at *5 (D. Md. Nov. 10, 2021) (dismissing wrongful termination claim with prejudice since "there is a specific statutory provision and remedy available to redress this claim.") (other citation omitted).